U.S. v. Jackson, we have a question for you. Now for the appellant, Mr. John Lulugian, an assistant U.S. attorney, and for the appellee, Mr. Brian Tushita. Is that correct? All right. So we'll proceed. We're 20 minutes. We're set for 20 minutes per side on this. Thank you. May it please the Court. My name is John Lulugian, and along with Susan Dorman, who's sitting at counsel, we represent the United States in this matter. I would ask the Court to reserve three minutes, please, for rebuttal. Jerry Evans Jackson pleaded guilty to engaging in illicit sexual conduct in foreign places. The title of the statute that is the subject of this appeal. The narrow issue before the Court today is whether the ex post facto clause of the United States Constitution bars prosecution of the defendant when he left the United States before the statute's enactment date, but sexually abused three boys on June 27, 2003, well after the enactment date. Based on these facts, the United States submits that the – there was no ex post violation – ex post facto violation. The reason for that conclusion – Could I just say something, please? Because I think it will inform your argument, or at least inform my understanding of your argument. The district court opinion and the briefing purports to be about an ex post facto issue, but it's really mainly about statutory interpretation. The district court's opinion was really a statutory interpretation opinion. And then at the end of it, he says, therefore, it doesn't violate the ex post facto clause, but what he was really saying was, therefore, in his view, it didn't violate the statute, as he construed the statute. So it would be helpful to me if you try to separate those two pieces out, because I found it very confusing to follow the argument, both yours, the defendant's, and the judge's, because these two pieces were completely intertwined. And before you respond, let me also say I share the concern expressed by Judge Verzant, and I would add this. Normally, I think we don't reach a constitutional issue unless it's required to reach it. So before, at least as one judge, before I would want to decide on the ex post facto clause argument, I think I would have to first construe or interpret the statute to see if that issue has to be reached. So for example, if traveling in foreign commerce includes getting into a cab at some city in Asia and going across town, and isn't the travel flying to, you know, flying to Cambodia before the statute, it changes the issues. It seems to me we sort of have to look at the statute in connection with or before we get to the constitutional issue. So I don't want to wreck your planned argument, but I think you should, in your argument, address the statute as well as the ex post facto. Well, actually, Your Honor, you hit on exactly where I was going. The real issue in this case is what is traveling foreign commerce? Because if Mr. Jackson is traveling, there's no ex post facto issue. So the question is, what does it mean to travel with respect to 2423C? And in trying to make this determination, we began by looking at the United States Code, and we found no definition for travel, no definition for travel in foreign commerce. So we stepped back and said, well, what is the common understanding of that term? When you look in the dictionary, what does travel mean? And travel, in essence, is a journey. You start somewhere, you go along the way, you come back. It's a trip. You go, it's an ongoing act. It's an ongoing process. And we submit that if you look at travel in this way and you apply it to the statute, it is the only interpretation that doesn't lead to an absurd result. It's the only interpretation that works. And here's why. The position of the United States is that travel in foreign commerce means that you start in the United States and you go off to somewhere else. And you travel to the country, you travel back from that country, or, as the Montfort Court suggested, you have some contact with that foreign state. But you've got to start in the United States first. And it's the position of the government that that travel starts in the U.S., goes to the foreign place, or has contact with that foreign place, and does not conclude until one of two things happen. One is you return to the United States or you renounce your citizenship. And the reason for that is that it will lead to an absurd result otherwise. And it also gives certainty to the defendant on what travel means. And here's how you get to the absurd result and why that interpretation is correct. If we start with what the purpose of the statute is, we have to look no further than the title, which is what Holy Trinity Church tells us. It's engaging in illicit sexual conduct in foreign places. And then when we turn to the legislative history, the House Conference Report, we see that what Congress was trying to do was take the intent element of the predecessor statute, 2423B, and take out that you have to travel with that intent. And Congress said that if that happens, the government only has to prove the conduct with a minor while in a foreign place. So what Congress is telling us is that what this statute is designed to do is prevent Americans, be they United States citizens, be they permanent residents, from sexually abusing and molesting minors in a foreign country. Now, if you try to Can I interrupt for a minute? It seems to me that I understand the problem with the district court's construction, with the very odd statute that was concerned with having sex with minors or anybody else while you're traveling, while you're in an airplane. But there's certainly a middle ground, which, because my reaction to your construction is that's a strange way to use the word travel. If somebody leaves the United States and goes to London and lives, and becomes a domiciliary in London and pays taxes in London and is a resident of London, I wouldn't call him traveling. I would call him an American citizen living in London. And so I wonder why a more sensible construction isn't until you change your residence, essentially. As long as you're not as long as you're a resident of the United States, then you're traveling when you're abroad. But if you're no longer a resident, then you're not traveling. I would put to the Court that the that that definition would have a troublesome problem. And the troublesome problem is that while you may be a resident of that country, you are there at their pleasure. You're traveling on a United States passport. You're traveling on a renewal. You're a holder of a United States passport. But I really think most people would not think you were traveling at all. But, Your Honor, if somebody asked what you were doing, you might say I was in Europe traveling for a couple of years. I was in London. No, I'd say I was living in London. I mean, there are many people who live abroad. And they don't live here. They don't have a house here. They don't have a life here. They have United States citizens holding United States passports, but they live abroad. They're not traveling by any usual sense of the word traveling. But we would we would but the problem if you put that limitation on it, which doesn't appear in the in the statute. It does if you construe the word traveling to mean that. If you construe it that way, it would. But here's the result you would get. The question is, when does the travel stop? If you say that you go and intend to be a resident. Well, how do we know? First, putting aside the issue of how do we know that? The question is, what is it? Do you have to be a resident for one day, five days, a year, two years, 20 years? If you get into that analysis, you confuse the issue because here's what happens. Congress is telling us what we want to do is stop Americans. They don't qualify. They say Americans from sexually abusing minors in these countries. If you put that limitation on it, what you're saying is that Congress said, if you're there for, say, five years, you can't do this. But afterwards, it's fair game. We can come out and reach you. We are not going to come out and reach you. You know, your argument seems to me to raise a whole new issue of vagueness in the statute. If it's that difficult to determine what travel means, how is the person supposed to know when he's violated the statute? Well, I would argue, Your Honor, that we don't take the position that it's ambiguous, that travel has this understood meaning. But somebody, especially in this context, knows there's no fair notice issue. They know that what they're doing is wrong. It is a malum in se crime. And they know that they cannot engage in this conduct outside of the United States. Why do you have to go through these contortions about the definition of travel? In this case, the statute applies because the defendant traveled from the United States to Cambodia. There's no question about that. So the question is whether he had to do it after the statute was enacted. Well, I would put it to the Court, Your Honor, that the definition you just gave me suggests that the travel concludes when one sets foot in that nation. Is it necessary to decide that it concluded? Is it enough to say that it happened? Well, our position would be that that travel is ongoing. Because if it concludes when you set foot into England, say that, taking Judge Burson's example, that I travel from the United States and Seattle to London, England, and I step off the airplane. Under that- That was not my example. My example is I then bought a house, got a job, sold my house to the United States, and announced to the world that I'm now a resident of London. That's a much more determinative period. Fair enough. But let's just say that it's when you set foot in this foreign nation for the first time. If that's the case, and travel is defined for that finite period in which you are in transit, then under this statute, the only way you could violate the crime, violate an act, commit the crime, is if you molest the child while you're either on the airplane or the ship. Well, do you have to – is there an ex post facto problem if any of the elements of the statute are satisfied after the statute's effective date? Or does it have to be that all the elements of the statute – do you have to say that all of the elements of the crime occurred before the effective date? No, Your Honor. The answer is if the court limited travel, and the court concluded that travel happened prior to the enactment of 2423C. Let's assume that for a moment, to follow Judge Schwartzer's hypothesis. Under that analysis, you still could determine that the ex post facto clause is not violated. You'd say you – the government's position would be it's not violated because even though travel occurred before the act, the travel in foreign commerce was after the act, so a party could – couldn't conform their conduct to the statute. Exactly, Your Honor. Right. But let me ask – and so my general common sense understanding of travel is different than Judge Berzon's common sense understanding of it or Judge Schwartzer's. So I'm just wondering, and obviously this here would turn on what Congress intended, but in a dictionary sense, wouldn't we say that everybody in this courtroom today traveled from their home or hotel to the courthouse? Yes. This means moving from a place to a place, right? That is correct. If I just look at the dictionary, and I say is someone traveling in foreign commerce, it could be they're traveling in foreign commerce if they take a subway in London from one stop to another. That would be a dictionary definition, traveling in foreign commerce, at least as I see it. So what tells us what Congress intended here? Do we have to be looking at the travel across the great Pacific Ocean or could there be travel across a city? I think with respect to this statute, you have to have some contact with that foreign state. And Your Honors hit the problem on the head. It's not defined. But I submit to this Court that what you said earlier is you can resolve this issue and find that there's no ex post facto problem without even getting to the travel issue. And the way you do that is what you outlined a moment ago, that all of the elements, all of the acts must be completed before the statute's enactment date. And there is case law, and we cited it in our brief, in the case of Alkins and some of the other cases, that when the elements straddle the enactment date, and especially in a situation which the gravamen of the crime, in this case the illicit sexual conduct, occurred after the date of enactment, that's when the offense took place. And there's no ex post facto problem because Congress was focusing on that crime. Traveling to Cambodia in itself isn't a crime. The crime is when you are in that foreign place and you sexually abuse the minor. So you're saying, assuming that travel in foreign commerce within the meaning of this statute means when he went to Cambodia, that there's no ex post facto law under the precedence, no ex post facto violation under the precedence that the crime occurred, it's because the illicit sex occurred after the effective date? Yes, Your Honor. Okay. But now, is there any court that's addressed what in foreign commerce really means within the meaning of this statute? Any appellate court? With respect to 2423C? Right. No, this is a case of first impression. But it's pending in this court. I mean, that precise issue, as I understand it, is pending in this court. In the Clark case? In the Clark case, isn't it? No, Your Honor. Not the ex post facto part of it. But the question of the commerce clause, the foreign commerce clause aspect of it. Yes, Your Honor. So it's likely, or at least possible, that that court is going to address – in a way, the issues that we're struggling with in terms of the interpretation are really not the ex post facto issues. They're really the in foreign commerce issues. And those, it seems to me, are likely to be addressed in Clark, are they not? Yes. The commerce clause issues would be addressed. But what I submit is that the commerce clause issues that are the subject of that litigation, ultimately the subject of whether 2423 is constitutional per se, don't come into an ex post facto analysis. But, it's very – I mean, it's too bad these cases – these issues became separated into two cases, because if they ended up interpreting the statute in the course of deciding the commerce clause question, for example, thinking that to avoid a commerce clause question, they had to avoid the interpretation that you're suggesting, because if the travel had already ended, then there would be a – an in foreign commerce problem. I'm just hypothesizing now. Then your answer to the ex post facto problem, which is, you know, fairly elegant and probably right, if we look at the statute in that sequential way, wouldn't be available, because that wouldn't be what the statute meant. So we have these kind of two things in the air at the same time. That's the tension that not only the Court is struggling with, but all of us are struggling with as well. But the position that we articulated in Clark, both in the district court and the appellate court, and the position that we're articulating today, is that the commerce clause aspect will bolster that. I'm getting close to the amount of time that I've reserved. I'll be happy to address that now if you'd like, Your Honor. Otherwise, I can certainly address that when I come back on rebuttal. I could reserve your time for rebuttal, I think. Thank you, Your Honor. And we'll give you some extra time if you need it. And we'll give some extra time to Mr. Tushita as well. It's rare we get one of these cases with a statute that's never been interpreted. Although here, I think our panel may be in a position where on the interpretation of informed commerce, we're going to have to wait for the other panel, which has priority. But let's proceed forward. Mr. Tushita. Thank you very much, Judge Gold. May it please the Court. I represent Mr. Jackson. I'd like to first address the Court's initial question about statutory interpretation and to pay particularly close attention to the specific choice of words, as well as whether these words were used in any other statute which would give light to their meaning. The government said the case is about traveling. Now, the statute doesn't say traveling or traveled. Congress specifically chose the term travels and travels in foreign commerce and engages. So the case is really not just about a term of general meaning, travels. Travels, in fact, is modifying the in foreign commerce. Now, in foreign commerce, in fact, is a term of art. It is not a term of general meaning. And there have been very few cases that have addressed what in foreign commerce means. But they clearly mean. Let's just cut to the bottom here, though. The real problem with your interpretation, which is the one that the district judge interpreted, is that it does seem rather silly, unless you can explain to me why it doesn't mean that the sexual activity has to take place in the airplane. I think that the actually and perhaps there's a little confusion as to what the real issues are. I don't think this Court has to decide how close in proximity to the travel the act must occur. I think what's before the Court is must both of these substantive elements, which comprise the crime, must both of them have occurred after the effective date. And I think that question does not really go to the Court's concern about the simultaneousness. It seems to be where the district court wound up, but it seemed to me where, unless you can tell me why not, where you seem to be saying that traveling in foreign commerce is the travel itself, getting from here to there. And then you go on to say that it's travels and engages by implication at the same time. So if not, if we don't know what the nexus is, how can we go on to decide the ex post after question? Well, because I think one could simply look at it this way. One could say, well, if the facts were different in this case, and Mr. Jackson had left the United States and went to Cambodia after April of 2003 and engaged in sexual activity, then the ex post facto or retroactivity question would not be before the Court. And then the Court would then have to struggle with the constitutional question of exactly what in commerce means and how close to the actual use of the channel must the illicit activity occur. But that's not the situation here. And that's why I say to the Judge Berzon, with all due respect, that the Court's question actually does not answer the issue of is this a prospective-only statute or not. The tried and true rule, of course, is that all statutes have prospective application unless expressly stated otherwise. But going, again, specifically to the question of what does travels in commerce mean, and I'd like to address the government's argument that we have no retroactivity or ex post facto problem because one always travels while one is abroad, I think is sort of the gist of their argument. Now, we do have not only the Commerce Clause jurisprudence of the Supreme Court, which says that is really not the case. The Fifth Circuit did address that in Monford, and that really talked about the U.S. v. Monford, the gambling ship to nowhere in which the ship did not actually go to a foreign country. And therefore, the Court said this is not a chance. That wasn't our case. That wasn't. It was cited in this – in the briefing in this case. But simply, the other thing also, Your Honor, is that if you look at the predecessor statute, 2423B, it tells you in an analysis that was used and that Judge Lasnik, Chief Judge Lasnik used in the Clark decision, contemplated the use of travels in foreign commerce as that portion simply between the United States and the foreign country. Now, in terms of trying to interpret what does travels mean, and also in the context of the – What do you think travels mean? I still don't understand that. Well, the – the Supreme Court jurisprudence in terms of travels in foreign commerce, I think you have to look at it that way. Okay. So what is your construction? It literally is the travel from this country to a foreign country. All right. So I still don't understand how you're avoiding the silly construction of the statute then. Well, I guess maybe I'm – I'm not trying to avoid it because I think it's a separate question in terms of – of the full scope of the – excuse me, the application or how far beyond the use of the channel can the activity occur. But I don't think that, again, addresses the question of the timing as to when the elements of the statute occur. Well, if we don't know the answer to that, how can we decide whether it applies in this case or doesn't apply in this case? Because I think that what the Court can – can – let me kind of break that down in terms of the whole issue of travels and the connection to the Act. First, just going to the issue of travels, I believe that if you look at the legislative history as well as the language of 2423b, the predecessor statute, it used the same phrase. It prohibited a person who travels in foreign commerce with the purpose of engaging in an illicit act. Now, the case law, such as Bredemus and Judge Lastnick's Clark opinion, clearly viewed the travel as that portion between the United States and the foreign country and the criminal intent during that travel. Has the Supreme Court said that travels in foreign commerce does not include the travel from point A to point B in the foreign country? I'm still in my mind sitting here saying, well, if someone gets on a subway in the suburbs of Paris and rides the subway to the Eiffel Tower to, you know, pay money to go up in the Eiffel Tower, they're traveling from point A to point B, are they in foreign commerce, or does the Supreme Court's precedent say, no, that's not what we're talking about? There's not a Supreme Court decision that addresses that directly, but the answer to your question is that that is not travel in foreign commerce. It's not, I understand. The Commerce Clause talks about the regulation of foreign commerce within a country, not within the country, not between two countries. But the Commerce Clause requirement is, you think, suggests that what Congress is aiming at here is the travel from the U.S. to the foreign country. That's correct. And I think that is actually consistent with 2423b's language and the limited legislative history as to the loophole that was supposed to be closed by this statute. And that's in the briefing, that this statute was supposed to close that loophole Now, mind you, if the government's interpretation is that one is always traveling while one is abroad, well, then there never was a loophole to be closed for 2423b. One would not have to be worried about the criminal intent limited between travel between the U.S. and a foreign country, because one is always traveling, and if one does a bad act abroad, that intent was limited. I mean, I think it's, to go back to what seems like common sense to me, which is not in disagreement with Judge Gould, if I go to, on a vacation to London or to Paris or to Europe, then it seems to me sensible to say that the whole time I'm in Europe, including when I'm on subways in Paris, but even if I'm sitting in my hotel room in Paris or whatever I'm doing, if I'm on a short trip and I'm intending to come back, isn't that whole excursion a travel in foreign commerce, not just when I'm on the airplane from one country to another? Not under the Supreme Court's jurisprudence. I mean, I think we need to separate the difference between almost a lay understanding of one's travel, sort of the noun, versus the term of art, travels modifying in foreign commerce. And the Supreme Court has been very careful to say that when Congress uses in commerce, it actually is talking about the channels, the traveling between the United States and that country. Now, I don't think there's a dispute that Congress chose a certain constitutional basis to promulgate this, which is why we're talking about the Commerce Clause and what the limitations of that. This Court in the very few courts that have tried to analyze all of the regulations in terms of foreign commerce, another panel of this Court in U.S. v. Cummings, the international kidnapping case, did say that we should – did use the Lopez, U.S. v. Lopez analysis that there's – there are three prongs of regularity. I was just going to ask you about Cummings, because it seems to me that Cummings takes a different view of the use of the channels of commerce than the one you're suggesting. Well, I would beg to differ, Your Honor, because the focus in Cummings and other – had to do with the – with the wrongful use of the channel. It was not about whether a person was in another country or whether – excuse me, a U.S. citizen was in another country or whether a U.S. citizen was here. But it was preventing somebody from traveling. That's right. And what happened was, of course, it was a U.S. citizen in a custody – not a dispute. It was a – but obviously, it was – parents were separated, and it was – I believe the Court said wrongfully taken to another country and wrongfully withheld. So what the Court was focusing on was the – the misuse of that channel and – and the impingement, holding, so to speak, a U.S. citizen hostage by preventing the travel. Now, we don't have that situation here. And so there's absolutely no allegation and, in fact, agreement that the travel in this case was completely wrong. I'm sorry to be – to be persistent about this. Let's assume you're right, okay? So let's assume that the travels and foreign commerce in this statute is the – the play trip itself. Then what? It then says, and engages in such and such. And what you are not trying to tell us we don't need to decide is what the connection is between the travels and the end. But I think that is – at this point, there's no case that actually resolves your specific question. But isn't it central to the ex post facto problem? Because if the – just let me finish. Because if they don't have to be simultaneous, then there really isn't much of an ex post facto problem for the reasons Judge Gould described earlier. That is, they did – or Judge Schwartzer as well. They did travel, even by your definition, and they did engage, by anybody's definition. And the engagement was after the statute. So what's the problem? Well, I would beg to differ in terms of the court's analysis, because I guess what the Court is asking is, in many sense, what is really the gist of the offense? Now, I would say that even as we speak today in 2005, if all we had in terms of facts for the court of a U.S. citizen committing a sex offense in a foreign country Excuse me. If all we had was a U.S. citizen committing an offense in a foreign country and nothing else, we wouldn't have a Federal crime. We certainly would not have the Federal crime stated in 2423C. And I don't think that's such a stretch to simply say that there is no statute that simply says anyone who – any U.S. citizen who commits a crime in a foreign country – excuse me. If you look at the excerpts of record, the district court, in fact, asks the government, are you telling me that any act outside of the United States that you can criminalize that? The government's position, at least in the district, was no. And that is why, and maybe going to your question about the relationship, without having to decide in this argument, there should be or needs to be some type of relationship. We had argued down below some type of close temporal relationships between the – between the travel and the act. Now, what this case is, is completely at odds with that idea and really concerned the district court, because the district court, in fact, asked the government, are you telling me that if a person traveled 30 or 40 years ago lawfully without any criminal intent, totally unrelated to something that happens now, that this person is going to be prosecuted? And the government's answer was, yes. And so that, of course, really can't be the case. And that is why I think – Kennedy, on what Congress aimed at doing and whether it's constitutional, I guess. But let me ask a couple of questions so you can cover that. First of all, if travels in foreign commerce means in the channel between the U.S. and the foreign country, assuming that, if you read the statute when it goes on to say in illicit sex, to mean just and thereafter engages in illicit sex, without a temporal – without an explicit limit on the time distance, would there be an ex post facto crime? Yes. And the reason why is that the real question is, do both of these acts which a defendant must commit, must both of them have occurred after the effective date? Now, is that as a matter of constitutional restraint or as a matter of what you think Congress intended? Wouldn't we – But both. I would say – But would Congress intend to reach the situation where the travel preceded the statute's date and the act of sex was after? I think that the Court can look at perhaps two different things. One is, well, what language did the Court choose? And there are any number of statutes in which Congress will state travels or has traveled. And so you know that it has application to travel perhaps before the enactment of the statute. The second thing has to do with the specific limited legislative history. As the limited history says that the statute was to close a loophole that was currently being used, there is no discussion that this statute was intended to reach back to past travel that had been completed years before. And in many ways, when you think about the language of the statute, if one were simply to say committing a crime in a foreign country is all that there is, then the statute should have said that. It could have simply said a U.S. citizen who engages in illicit activity in a foreign country. Well, I might be wrong in this, but I assume someone could be born in a foreign country, a child of a U.S. citizen, and have U.S. citizenship and stay there and keep their U.S. citizenship and be there without ever having traveled to there. That's correct. I'm assuming that. So, therefore, if you had a person in that situation, they'd be a U.S. citizen, they're in a foreign country, they committed illicit sexual act, but they haven't traveled there for certain. You know, unless you just count their travel in foreign commerce to include taking a cab from their house to the across town or something. That's correct. As a matter of congressional intent. Yes, Your Honor. What would be the argument that Congress intended only to reach travel that occurred after the enactment of the statute? Because travel to Cambodia itself, it's no illicit consequence. It's a perfectly lawful act. So why would Congress want to focus only on travel that took place after the enactment of the statute? Well, as I said, I think there are two things a court could look at. First of all, in fact, as the government has conceded, travel does mean travel from this country to another country. So when they enact the statute, Congress is saying, if you travel from this country to another country from this point on and you engage in an act, you will be subject to prosecution. Now, that did not occur in this case. I understand that. But why would Congress so limit the purpose of the statute? And they were obviously concerned about a particular evil in closing that loophole. I think perhaps the other answer to why Congress would have intended it is that I think Congress also wanted to craft a statute that was within or that would not contravene the spirit of the Constitution. Of course, the longstanding law is that both the goal has to be proper, but the means has to be proper. And of course, as the government admitted down below in the district court, there are serious notice and due process types of concerns that come to bear, that arise. Certain due process concerns with regard to if you're covered? If you had traveled many, many years ago, and the district court said, given the scenario, if you had traveled many years ago and never come back, you were living abroad. And the government said, well, maybe that raised some due process concerns. But the problems would really be when they, in the nature of foreign commerce clause problems and not really in the nature of ex post facto problems. I mean, the person who's there, if he knows he's covered and he's constitutionally covered, can certainly avoid committing the crime. There's no notice problem, because he just has to not engage in the sexual abuse. The real problem is how does the federal government get to reach this person's activities, or why should we think Congress was trying to, even if it could, if he's kind of cut his ties to the United States except for continuing to carry a passport? Well, maybe breaking the question into two parts. First, I would not agree that you would have noticed you're actually committing a U.S. crime. You might have noticed that you're committing a Cambodian crime. But as our position, I think it is correct to say that the actual commission of a sex act in Cambodia is not a U.S. federal crime. It's almost like saying in this state if someone But you won't have committed the crime unless you do that. So you therefore have sufficient notice to avoid committing the crime. Well, you're, when you talk about notice, you're talking about is the act prohibited by law, U.S. law. If the act is not prohibited, then all we're simply saying is, well, you had noticed that you don't have notice that you're engaging in a prohibited act. And I think the difficulty is that one is so used to thinking that, as the government says, Malaman Se, this is just a crime. But the question is not whether there was wrongdoing under Cambodian law or under some general sense. The question is, does that actually constitute a federal offense? And the answer is no. Just as if you were assaulted right here on the street, well, that might be a bad act, that might be a state violation. That is not a federal crime. You don't have notice that you're committing a federal crime. You might have notice you're committing a local state crime, but not a federal crime. I'm sorry. I'm just not seeing that. You do. I mean, on whatever the effective date of this statute was, the day after that, you could say to yourself, I better not molest any children in Cambodia because if I do, having traveled here already, I will have committed a crime, if that's what the statute means. But, well, we don't agree that it means that. I understand that. But if it did mean that, I don't see why there would be an ex post facto problem. And your time is up. But feel free to take a couple of minutes to answer Judge Berzon's inquiries if you wish. We'll have time for the government. It's a novel statute, so we don't want to rush it. Well, maybe to address Judge Berzon's question, I mean, this, again, the conduct in this case becomes a federal crime because of the two elements together. And this is not simply sort of a jurisdictional element, which is not substantive. It actually goes to the merits of the case. One would, in fact, be deprived of a defense if one were told, oh, your travel is totally irrelevant. Because, mind you, the statute requires a person to engage in the act of travel. It is something he actually has to do, and it is something the government would actually have to prove at a trial. The government's construction really removes that. And that is why I think there is actually a close connection between the two travels in foreign commerce and engages. The Congress used plain words in terms of the tenses, that this would be consistent with the Supreme Court's jurisprudence on commerce clause. And actually a very narrow interpretation of what a channel's regulation amounts to. We may say that there are some problems or absurdities, but we didn't draft the statute Congress did. Now, I don't really think that we're at liberty to actually redraft it or remove elements or to say, well, this would have a very narrow application, so I would like to interpret it in a different way. After all, in the felon and possession cases, in or affecting, there are almost no cases in, because it's very rare that the felon is actually stopped at the border with the gun in his car. These are all cases usually involving subsequent possession. But the Court doesn't suddenly say, well, because in has a very narrow application, let's just make it equal to something else. My time is up, and thank you for giving me the extra time. Thank you for your argument. Now, Mr. Lulogin, we will give the government also, let's say, three extra minutes you could add to the clock. I said we would stick to our time today, but interpreting a statute no one else has interpreted has piqued the interest of the panel. So feel free to take a few more minutes, but you don't have to use it all up. Thank you, Your Honor. I'll try to be brief. Let me put an answer to you in order to avoid running over. Let me put a question that you can answer somewhere along the way if you get to it. And that is, what about the use of the present tense in the statute? I mean, why couldn't, why wouldn't it be sensible? On a sort of landscrap theory, which isn't really not even necessarily an ex post facto theory, that by using the word travels, at least Congress told us that it meant to cover something that happened after the effective date, not before. Period. We don't do anything more complicated than that. Whatever the nexus is between the two elements or anything else, the travel has to start after the effective date. Let me see if I can try to address that, Your Honor. The problem with the argument presented about the present and past tense is this, that if you look within 2423C and if you look at the other statutes and you see how it is always, encumbered is probably the wrong words, it is always limited by either an intent element or it's got to have some connection. For example, within 2423C, answer 2423, in section A, which deals with transportation with the intent to engage in a criminal sexual activity, you've got to have the limitation that the travel with that intent happens simultaneously. You have that in section B. You've got to travel with that intent. If you turn to other statutes that we cite, and for sake of time I won't go through them all, but they're on page 25 of the government's opening brief, the court limits it with words such as with intent, for the purpose of, in the course of, or in furtherance of. We don't have any of that here, which suggests that Congress was trying to cast a very broad net. They didn't want to put a temporal component to this. Now, Judge Bergeson, you raised some questions about the commerce clause earlier, and counsel said something that I want to correct. The defendant suggests that by using the words in commerce, the only possible prong of a commerce clause that comes into effect is the first prong with Lopez's fourth channels. That's simply wrong for a couple of reasons. First of all, the Supreme Court has told us that there is no uniform definition of in commerce. Secondly, this court, on two occasions within the last couple of years, in the McCoy case and in the Adams case, has interpreted a child pornography statute, which uses in commerce as not going to the channels commerce prong, but going to the substantially effects prong. And the reasoning set forth in Adams is because the court determined that Congress was trying to tackle the demand end of child pornography. They realized that the supply of child pornography had gone underground. They couldn't do anything about it. And they said that when people receive child pornography, when they possess child pornography, what they are doing is they are promoting that practice. It substantially affects the problem they are trying to stop, which in that case was sexual exploitation of children through pornography. I put it to this court that that's the same analysis in this case, because what Congress is trying to stop is the sexual abuse of children by Americans. We're not worried about other people. We have concerns about them, but we know from cases such as Blackmer, from Curtis Wright, that what we can do is reach out and control the actions of our citizens abroad. And this is supported by the President's statements before the United Nations. It's supported by Colin Powell's reasoning that we've attached. And I think that's set forth in the excerpt of record. I'll find the site in a moment. And it's also set forth if you look at the predecessor statute that passed the House, that would be H.R. 107-525. And in the background and need for the legislation, Congress says that there has been sexual tourism, combating the abuse of children. And Congress says that Americans are contributing to this problem. We need to do something about it. So I put it to this court that what Congress is doing by putting in the phrase traveling commerce is a nod per se. It says that we recognize that this heinous activity, having sex with children, abusing children, molesting them, is something that can be stopped if we stop the demand. Because if we stop the demand and we tell our citizens that if you engage in this, which you know is wrong, and you're on notice that it's wrong, it might stop the supply. The last point I'd like to make is an issue that just Swarzer brought up early on. And I don't think I addressed it properly. You asked about the travel. And we talked about whether it, you know, what happens when you travel from the United States and it comes to a foreign country. And the defense just commented, just remarked that the appropriate analysis is that that's the length, the travel. Assuming we're not in a situation where the only time you can molest somebody is on the airplane. But it comes to the, you start in the United States and you go somewhere. The issue then becomes, if you take the narrow definition of travel, is what happens if you break up the trip? Because if you break up the trip, so say for example, I do what Mr. Jackson did. I go from Seahawk Airport to Thailand, Bangkok. I stay there for a couple of months and then I go to Cambodia. Under their definition of travel, travel would only, in foreign commerce, would only consist of that first leg of the journey. Because if I left from a foreign place and then I went to another foreign place, under that definition it wouldn't be travel in foreign commerce. It would be broken up. So now what you're telling people is if you take a direct trip and you commit the crime, we're going to prosecute you. But you know what? If you break up your trip, if you make stops along the way, we can't touch you. If you step back and look at the statute, and I propose this is the right way to do it. Congress is worried about, Congress wants to cast a very broad net. It says that we're not going to let our citizens do this. We have the right to regulate it under the Constitution. One thing that I don't understand really is that you're proposing, I mean, we have the defendant proposing a sort of indistinct interpretation out here. You're proposing one out here. But on your theory of the ex post facto theory, you don't need her interpretation. And I'm just having a hard time understanding. I mean, ultimately, if the statute, as I understand it, you would say that the statute would be a non-ex post facto if it simply meant the person travels in interstate commerce and 20 years later, still holding a United States passport, commits sexual abuse. And that there wouldn't be an ex post facto problem. You've cut right to the heart of it, Your Honor. If you say that the ex post facto clause requires that the final component of the crime take place after the date of enactment, you don't have to interpret travel. You don't have to even get there. Gary Evans Jackson was three kids, three boys, on June 27th. Statute went into law on April 30th. And you don't think there'd be a foreign commerce clause problem with that either, even though the person did stop traveling 20 years ago? I wouldn't say there was, and it wouldn't be a problem. And because there's no issue of fair notice, which is what the commerce clause No, not an ex post facto problem. I'm sorry. But there'd be a commerce clause problem. My apologies, Your Honor. I don't think it would be. And the reason is because it still would substantially affect commerce. And in this case in particular, the facts that I think are unique is that Mr. Jackson has not cut off his ties with the United States. He maintains a bank account in Washington. He wired money from Washington to Cambodia. And when he was in Cambodia, they wired $10,000 back. The house they live in is paid for money that was sent from the United States. He draws pension. That pension goes into an account. What you're really saying is the definition of travel is a question of fact for the jury. That's what you're saying. And that's really a whole different issue from the ex post facto issue that we're addressing. I'm not sure I understand your question, Your Honor. Well, you are reciting facts that may lead to the conclusion that this is travel within the meaning of the statute because he's still maintaining contact with the United States. But that's really a fact question, isn't it? Yes, Your Honor. I guess what I'm arguing is if the Commerce Clause component or the argument that the defense is making sheds some light on travel, under Commerce Clause analysis you have to look at some of the facts. You could certainly say under the broad theory it substantially affects. But if you were going to go with the first prong, which is channels of commerce, and I do submit that the channels of commerce is also affected, that would be a factual issue. And in the Clark case, that's what the court hung its hat on. And that's what we argued in this case as well, that the channels of commerce would be satisfied in addition to substantially affects. Well, we're over time. I think we better bring it to a close. Your Honor, the government's position is that there is no ex post facto problem and therefore we respectfully request that the court reverse the lower court's ruling and to remand the case. Thank you very much. Now, Mr. Tsuchida, we went over time with your colleague from the government's argument. If you want a minute of further rebuttal with argument, we'd give it to you. But if you don't need it, we will submit the case. I just have one brief comment, Your Honor. If anything new came up in that. It had to do with the government's argument that the statute should be analyzed as an affects statute. And I think that is fundamentally incorrect. When Congress picks specific terms of art, it is picking the prong. And I think Circuit City, which is the U.S. Supreme Court case, supports that. The other thing is that it would defy the analysis set forth in the Morrison case, the U.S. Supreme Court case, in which there really are four factors which must be shown, none of which really appear in this case. Thank you, Your Honor. Thank you both. The case is very well argued by both appellant and appellee. And we appreciate the help with the statute that hasn't yet gotten appellate attention. So thank you very much. The case of U.S. v. Jackson shall be submitted.
judges: Gould, Berzon, Schwarzer